UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                      )
                                            )
   TERRY A. KING                            )   Case No. 08-13152-SSM
   MARIA A. KING                            )   Chapter 13
                                            )
        Debtors                         )

## MEMORANDUM OPINION

A hearing was held on March 25, 2009, on the debtors' objection to several claims filed in their case, including Claim No. 14 filed by Jefferson Capital Systems, LLC ("Jefferson") and Claims No. 15 and 16 filed by eCAST Settlement Corporation ("eCAST"). Jefferson and eCAST, though given notice of the objection and the hearing, did not respond and did not appear. The court sustained the objections to a number of claims but took the objections to these three claims—which together total a relatively modest $1,601—under advisement to determine whether a claim may be disallowed when the objecting party does not challenge the validity of the original indebtedness but simply the lack of any evidence to show that the debt was ever sold or assigned to the party filing the proof of claim. For the reasons stated, the claims will be disallowed.

Background

Terry A. King and Maria A. King are husband and wife. On June 2, 2008, they filed a joint voluntary petition in this court for adjustment of their debts under chapter 13 of the Bankruptcy Code. After several proposed plans were denied confirmation, a modified plan was eventually confirmed on December 19, 2008. It requires the debtors to pay the chapter 13 trustee

1

$978.58 per month for 60 months and projects a dividend to unsecured creditors of 54 cents on the dollar.

A total of 19 unsecured claims have been filed in the aggregate amount of $94,475.12.[1] Among them are the three claims presently at issue:

> ● Claim No. 14 in the amount of $1,060.18 filed by Jefferson Capital Systems, LLC, as assignee of CompuCredit Corporation, itself apparently an assignee of Aspire VISA.[2] The only document supporting the claim is a single-page "Account Statement Summary" apparently generated by Jefferson's computer system reflecting Ms. King as owing that amount.
>
> ● Claim No. 15 in the amount of $326.04 filed by eCAST Settlement Corp. as assignee of GE Money Bank/Chevron US. The only document supporting the claim is a single-page "Account Summary" apparently generated by eCAST's computer system showing Ms. King as owing that amount.
>
> ● Claim No. 16 in the amount of $214.78 filed by eCAST Settlement Corp. as assignee of GE Money Bank/Sam's Club. The only document supporting the claim is a single-page "Account Summary" apparently generated from eCAST's computer system showing Mr. King as owing that amount.

On their schedules, the debtors list undisputed debts owed to Aspire VISA of $1,044, GE Money Bank/Chevron of $343, and Sam's Club of $243.

## Discussion

It is increasing common in bankruptcy cases that proofs of claim are filed, not by the company or financial institution originally extending credit to the debtor, but by distressed debt purchasers who buy up such claims in bulk. Despite the clear requirement of the Bankruptcy Rules that creditors (1) attach to their proofs of claim copies of supporting documents and (2)

---

[1] An additional claim was withdrawn after the debtors filed their objections.

[2] Claim No. 14 purports to be signed by someone named "Amy Payment Manager," who may or may not be a real person.

that they itemize any interest or other charges included in the claim, the claims filed by the distressed debt purchasers commonly do not include such documentation, nor do they itemize the interest and other charges included in the debt. This court last had occasion to address this problem several years ago in an unpublished opinion involving one of these same creditors. *In re Josephine McCarthy*, No. 04-10493-SSM (Bankr. E.D. Va., July 14, 2004). That case, like this, was a chapter 13 case. eCAST had filed two claims as assignee of Providian Bank, attaching only the same type of "Account Summary" as in this case. In that case, however, unlike this, eCAST responded to the objection and prior to the hearing produced copies of account statements going back two years for the underlying credit card accounts. A second creditor, Direct Merchant's Credit Card Bank, did not respond to the objection and did not appear at the hearing.

In *McCarthy*, the court set forth the general principles governing proofs of claim and objections as follows:

> Except in chapter 9 and chapter 11 cases – where certain claims listed on the debtor's schedules are "deemed filed" – a creditor must file a proof of claim in order to receive distributions in a bankruptcy case. Fed.R.Bankr.P. 3002(a). A claim, if filed, is allowed unless a party in interest objects, in which event the court, after notice and a hearing, is required to determine the amount of the claim as of the date of the filing of the petition. § 502(a) & (b), Bankruptcy Code.
>
> A proof of claim is "a written statement setting forth a creditor's claim" and must "conform substantially" to Official Form 10. Fed.R.Bankr.P. 3001(a). *See also* Fed.R.Bankr.P. 9009 (requiring that the Official Forms "be observed and used with alterations as may be appropriate."). The rules provide that when a creditor's claim "is based on a writing," the original or duplicate of the writing must be filed with the proof of claim unless it has been lost or destroyed, in which event a statement of the circumstances of the loss or destruction must be filed with the claim. Fed.R.Bankr.P. 3001(c). Official Form 10 instructs the creditor to attach "copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of liens," but also

3

states, "If the documents are not available, explain. If the documents are voluminous, attach a summary." As noted, the Official Form also requires the creditor to specify whether the claim includes "any interest or other charges in addition to the principal amount of the claim" and to attach an "itemized statement of all interest or additional charges."

A proof of claim executed and filed in accordance with the Rules is "prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f). As a result, the party objecting to such a claim has the initial burden of presenting evidence to overcome the prima facie showing made by the proof of claim. *In re C-4 Media Cable South, L.P.,* 150 B.R. 374, 377 (Bankr. E.D. Va. 1992). Once the party has done so, the burden of proof shifts to the creditor to establish the validity and amount of its claim, unless the objecting party would have had the burden of proof outside of bankruptcy, in which case the burden remains with the objecting party. *Raleigh v. Ill. Dep't of Rev.,* 530 U.S. 15, 120 S.Ct 1951, 147 L.Ed.2d 13 (2000); *In re C-4 Media Cable South, L.P.,* 150 B.R. at 377.

*McCarthy*, op. at 4-6.

The issue in *McCarthy* was whether the challenged claims should be disallowed because the creditor did not attach the writing upon which the claim was based and did not intemize the amount of interest or other charges included in the claim. *Id.* at 6. No issue was raised as to the validity of the assignment. With respect to the lack of supporting documents, the court concluded that "[t]he general trend of the reported decisions is that a creditor's failure to attach supporting documents to its proof of claim will not ordinarily result in disallowance of the claim but will at most deprive the proof of claim of its prima facie effect." *Id.* at 9; *In re Andrews*, 394 B.R. 384, 389 (Bankr. E.D. N.C. 2008) As this court noted, however,

Of course, this begs the question of just what kind of "writing" or supporting documents are required for a creditor – and in particular a credit card creditor – to have the benefit of the prima facie validity rule. Typically, there will be an application (which however may not be in writing, as some credit cards are issued based on telephone applications), a card holder agreement, and monthly account statements. At least one court has held that it is sufficient to attach the most recent billing statement showing the account number, billing cycle, minimum payment due, and the balance. *In re Thompson*, 260 B.R. 484 (Bankr. W.D. Mo. 2001). A recent opinion by the United States Bankruptcy Court for the Western

> District of Washington goes further and requires that a credit card creditor, at a minimum, attach to its proof of claim, or provide no later than in response to a claims objection, (I) a sufficient number of monthly account statements to show how the total amount asserted has been calculated, and (ii) a copy of the agreement authorizing the charges and fees included in the claim. *In re Henry*, 331 B.R. 813, 817-18 (Bankr. W.D. Wash. 2004).
>
> In *Henry*, the chapter 13 debtors objected to ten claims, including two that had been assigned to eCast. As here, eCast – after receiving the objection – supplied copies of the billing statements together with a one-page "Accounting Summary" showing the total amount charged. *Id.* at 815. The court held that such documents were not sufficient to comply with the "writing" requirement of Rule 3001(c) because without the card holder agreement the debtors could not determine from the statements the legality of the charges. *Id.* at 820. The court accordingly struck the claims but allowed eCast 30 days in which to file amended claims "that include copies of the relevant credit agreements authorizing the charges shown on the account statements." *Id.*

*McCarthy,* op. at 10-11. The court then addressed the question of whether eCAST's "Account Summary" satisfied the requirements of the Bankruptcy Rules and concluded that it did not:

> [T]he court has little difficulty in concluding that the two claims filed by eCast in this case utterly fail to satisfy the requirement of Rule 3001(c) that the "writing" – or, in the case of voluminous or missing documents, a summary or explanation – be attached to the proof of claim. The so-called "summary" which eCast has attached is in fact no summary at all: it is simply an extraneous piece of paper that supplies no more information than is already set forth on the face of the claim (i.e., the debtor's name and address, the case number, the account number, and the gross amount claimed). Contrary to the argument made by eCast in its brief, what is required by Rule 3001(c) is not a summary of the debt but a summary of the documents supporting the debt. And the short of the matter is that the eCast exhibit fails even as a meaningful summary of the debt, since it does not break out what amount is principal, what amount is finance charge, what interest rate is being charged, and what "other" charges (such as overlimit fees) are included in the claim, nor does it state over what period the charges were incurred – all information that should be readily available in an age in which credit card accounts are maintained on large and sophisticated computer systems. Even simply attaching a copy of the most recent account statement sent to the debtor prior to the filing of the bankruptcy petition would provide more meaningful information than is set forth in the purported "Account Summary."

5

*Id.* at 11-12.[3]  After considering, however, the liberal policy in favor of allowing creditors to amend deficient claims, the court concluded:

> [W]here objection is made to a proof of claim based on the creditor's failure to attach the writing on which the claim is based, the creditor, prior to the hearing on the objection, should be allowed to file an amended proof of claim that cures the deficiency or, even without so amending, to appear at the hearing and present evidence to prove its claim.  But unless the claim is amended to comply with Rule 3001, it does not have the benefit of the prima facie validity conferred by Rule 3001(f).  *This means that if the creditor presents no evidence in support of its claim, it has necessarily failed to carry its burden of proof, and the claim must be disallowed.*

---

[3]  In *McCarthy*, the court offered the following guidance—which eCAST has obviously not taken to heart—as to what might constitute minimally sufficient documentation:

> Since eCast has not attached *any* meaningful writing or document summary to its proof of claim, the court need not determine exactly what documentation would be sufficient to satisfy Rule 3001(c).  Nevertheless, some discussion is appropriate for the guidance of the parties. Obviously, competing interests are at stake.  Trustees and other parties with standing to object need sufficient information to determine whether to object to a particular claim.  In the case of credit card debts, for example, there may well be a concern whether the interest rate and other charges are supported by the contract between the debtor and the card issuer and whether those rates are legal under applicable law.  At the same time, the requirement should not be interpreted in such a way as to place an undue burden on creditors.  Additionally, as bankruptcy courts move toward electronic claims submission, there are practical and technical concerns as well, since scanned documents not only take up substantial storage space on the court's servers but sometimes cannot be uploaded or downloaded over dial-up connections without the electronic filing system timing out.
>
> These competing concerns, the court believes, would be satisfied by attaching to the proof of claim (1) a copy of the most recent billing statement sent to the debtor prior to the date of the bankruptcy filing and (2) either a copy of the most-recently issued cardholder agreement or a summary that states the date of the agreement and its essential terms, such as the interest rate, how the finance charge is computed, minimum payment, due date, late charges, and other permitted charges.  If even these minimal documents cannot be located, the creditor must, at the very least, attach a statement explaining "the circumstances of the loss or destruction."

*Id.* at 15-16 (emphasis added).  Based on that analysis, the court disallowed the claim of Direct Merchants Credit Card Bank, since it had not amended its claim, responded to the objection, or appeared at the hearing on the objection. *Id*. at 16.  eCAST, by contrast, had responded and had supplied debtor's counsel with copies of the credit card account statements going back two years.  Since one of the eCAST claims was in an amount identical to the amount scheduled by the debtor, the court allowed that claim and set an evidentiary hearing as to the other claim, which had been filed in an amount higher than admitted by the debtor on her schedules.  *Id.* at 17.

*McCarthy*, to be sure, does not specifically address the issue in this case, since it does not appear there was a dispute in that case as to eCAST's standing to file the challenged proofs of claim.  Additionally, eCAST's proofs of claim in this case were filed in amounts slightly *less* than the amounts admitted by the debtors on their schedules. (Jefferson's claim, however, was filed in a greater amount that reported on the schedules.)  Another court within this circuit has suggested that evidence supporting an assignment need not ordinarily be attached to a proof of claim.  *In re Simms*, 2007 WL 4468682 (Bankr. N.D. W.Va. 2007).  *Simms*, like this case, involved a claim filed by eCAST as assignee of the original creditor.  In contrast to the present case, however, eCAST did respond to the objection.  In any event, Judge Flatley joined with the majority of courts in holding that "it is not enough for the Chapter 13 debtor to merely complain that the proof of claim filed by a creditor lacks sufficient documentation under the Bankruptcy Rules, the debtor must also assert a ground for disallowance under § 502, as for example, by contesting the amount claimed to be owed." *Id.* at *2.   He then noted that under Rule 3001(e), when a claim is transferred before the filing of a proof of claim, there is no requirement that

evidence of the assignment or transfer be filed with the claim. *Id*. at *11. Accordingly, he declined to "impose any additional requirement on a claim transferee that does not appear in the Rules of Bankruptcy Procedure or the statute itself." Because the debtor's schedules acknowledged the debt to the original creditor and because the debtor had not asserted any basis for disallowance of the claim, Judge Flatley ruled that he was "not called upon to determine whether or not eCast must document the assignment of its proof of claim for that claim to be afforded the . . . presumption of validity, or whether the assignment eCast filed with its response is sufficient." *Id.* at *4.

In this case, unlike *Simms*, eCast has not responded to the objection by producing a copy of the assignment. In the absence of any response to the objection, the court can see no reason for adopting a different rule with respect to documents evidencing assignment of a claim than to other types of documents supporting a claim. Put another way, it is not sufficient that the debtor owes *someone* money; the issue is whether the debtor (and hence the bankruptcy estate) owes it to the party filing the proof of claim. Particularly when (as here) unsecured claims are being paid through a "pot" plan at less than 100 cents on the dollar,[4] fairness to those creditors who have filed proofs of claim properly documenting their right to payment demands that the distribution to them not be diluted by payment to creditors asserting doubtful or undocumented claims. Under the local rules of this court, if a creditor fails to file a timely written response to an objection to its claim, "the court may treat the objection as conceded, and may enter an order

---

[4] In a "percentage plan," creditors receive a set percentage of their allowed claims while leaving the exact amount the debtor will pay in flux until all claims are resolved. In a "pot plan," the debtor pays a fixed amount, and the percentage the creditors receive depends on the total amount of allowed claims. *In re Witkowski*, 16 F.3d 739, 741 & n. 11 (7th Cir. 1994). The standard form of chapter 13 plan in this district is a pot plan.

8

without holding a hearing disallowing the claim in whole or part as set forth in the objection to claim." Loc.Bankr.R. 3007-1(D).  Here, the objection squarely raised the issue of whether eCAST and Jefferson are the actual owners of the claims scheduled by the debtor.  Neither creditor having responded to the objection by providing proof of ownership, the court sees no reason why the objection should not be treated as conceded and the claims disallowed.

      Separate orders will be entered disallowing the three claims at issue.

Date: _____       _____
                                                        Stephen S. Mitchell
Alexandria, Virginia                        United States Bankruptcy Judge

Copies to:

Lois Ilaine Upton, Esquire
Robert A. Ades & Associates PC
5419-B Backlick Road
Springfield, VA 22151
Counsel for the debtors

Terry A. King
Maria A. King
11991 San Ysidro Court
Woodbridge, VA 22192
Debtors

Thomas P. Gorman, Esquire
300 N. Washington St., Suite 400
Alexandria, VA 22314
Chapter 13 Trustee

Jefferson Capital Systems, LLC
Attn: Amy Payment Manager
P.O. Box 7999
St. Cloud, MN 56302-9617

Jefferson Capital Systems, LLC,
c/o Corporation Service Company, R.A.
11 S 12th St
PO Box 1463
Richmond VA 23218

eCAST Settlement Corporation
Attn: Thomas A. Lee, II.
P.O. Box 35480
Newark, NJ 07193-5480

eCAST Settlement Corporation
Attn: Charles J. Rusbasan, Pres.
383 Madison Ave. Fl. 21
New York, NY 10179-0001

eCAST Settlement Corporation
c/o CT Corporation System, R.A.
4701 Cox Road Ste 301
Glen Allen VA 23060-6801